# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STANLEY REDDICK,<br>  *Defendant*. | No. 3:17-cr-00135 (JAM) |

## ORDER DENYING MOTION TO SUPPRESS

Defendant Stanley Reddick has moved to suppress evidence that law enforcement agents searched and seized from two bedrooms that he occupied at a single-family house in Hartford, Connecticut. Reddick contends that the search warrant for the whole house violated the "particularity" requirement of the Fourth Amendment—the requirement that a search warrant must describe with particularity the places to be searched. According to Reddick, the warrant did not comply with the particularity requirement, because law enforcement officers knew or should have known that the house was a multi-occupancy or multi-unit building for which law enforcement officers were required to obtain a probable cause warrant as to each occupancy unit to be searched. I conclude that the house did not contain separate residential units within the meaning of the Fourth Amendment and that the warrant affidavit established clear probable cause for the search of the entire house. Accordingly, I will deny the motion to suppress.

### BACKGROUND

On April 28, 2017, Special Agent Griffin T. Farley of the Bureau of Alcohol, Tobacco, Firearms, and Explosives applied for and obtained a federal search warrant for 18 Ashford Street in Hartford, Connecticut. The search warrant described the premises to be searched as follows:

> 18 Ashford Street, Hartford, Connecticut, which is located on the north side of Ashford Street, near the intersection of Main Street. The Search Location is a two-story, single

1

family colonial structure with green clapboard siding and a white front door covered by a white overhang. Above the mailbox to the right side of the front door the residence is clearly marked with the number "18." The Search Location has a second entrance on the right side of the residence that is accessed via the driveway that is also on the right side. Additionally, there is a free standing, two-bay garage behind the residence at the rear of the driveway.

The affidavit in support of the search warrant established probable cause to believe that Reddick was a crack cocaine dealer and that he kept his crack cocaine at the house at 18 Ashford Street where he was seen multiple times. The affidavit described two of Reddick's crack cocaine sales on April 21 and April 25, 2017.[1] For both sales Reddick left 18 Ashford Street to meet a confidential witness at a nearby gas station where he negotiated a deal to sell crack cocaine. Reddick then returned to 18 Ashford Street to retrieve the crack cocaine and drove back again to the gas station to deliver the crack cocaine, before returning once more to 18 Ashford Street with the money from the crack cocaine sale. Each time Reddick was observed going in and out of the front door of the house at 18 Ashford Street.

At the suppression hearing Agent Farley testified that 18 Ashford Street was in a residential neighborhood of average style residential homes. When drafting the search warrant affidavit, he relied in part on an "Unofficial Property Record Card" from the City of Hartford's assessor's office. Govt. Exh. #16. This card includes a photograph (below) of the front of the home as well as an assessment of the property for the fiscal year 2016. It describes the house as a "ONE FAMILY" structure of 1,533 square feet with four bedrooms, one full bathroom, and one half-bathroom. *Ibid.*

---

[1] Testimony at the suppression hearing indicated that the second sale took place on April 25, 2017. The affidavit in support of the search warrant inconsistently describes the second sale as having taken place on April 24 and on April 25.

2



Law enforcement agents executed the search warrant on May 3, 2017. Upon arrival they learned that several people lived in the house, including Reddick who used two of the bedrooms on the second floor. The interior was not demarcated or subdivided in a manner to suggest that there were distinct apartment units or that any members of the house did not have access to any of the common areas of the house such as the kitchen and bathrooms.

Reddick and his girlfriend were found in one of the second-floor bedrooms at the time of the search, and his bedroom door was locked from the inside. Besides the fact that the bedroom door was locked from the inside, there was no indication outside the door that Reddick's bedroom constituted a separate apartment unit. A piece of mail was found with Reddick's name and the typed address of "18 Ashford Street," and there was no other indication of multiple addresses at this location (*e.g.*, "18A" or "18B" Ashford Street).

The agents searched the entire house and seized items of evidence, including narcotics from the area of the two bedrooms on the second floor that were used by Reddick. At trial the Government intends to introduce only items of evidence that were seized from the two bedrooms that were used by Reddick and not to introduce any physical evidence from elsewhere in the house.

**DISCUSSION**

The Fourth Amendment protects the right of the people to be secure from unreasonable searches and seizure, and it further provides that a search warrant must describe with particularity the places to be searched. U.S. Const. amend. IV. As the Second Circuit has explained, the particularity requirement of the Fourth Amendment has three components: that a warrant identify the specific offense for which the police have probable cause, that the warrant describe the place to be searched, and that the warrant specify the items to be seized. *See United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013).

This case involves the particularity requirement with respect to the place to be searched. The usual rule is that if the Government has probable cause to search the apartment of a suspect who lives in a multi-unit apartment building, the Government is not at liberty, absent further probable cause, to search the apartments of everyone else who lives in the building. That is because "the general requirement [is] that the search of a multiple-occupancy building must be supported by probable cause to believe that evidence of criminality will be found throughout the building." *See United States v. Clark*, 638 F.3d 89, 95 (2d Cir. 2011).

On the other hand, what if the Government has probable cause to search a *single* residential unit that a suspect shares with others? The usual rule is that the Government may proceed with the search warrant to the extent that there is probable cause to search the shared residential space and despite the intrusion on the property and privacy interests of third parties. That is because "[a] person who occupies premises jointly with another has a reduced expectation of privacy since he assumes the risk that his house-mate may engage in conduct that authorizes entry into the premises." *United States v. Lovelock*, 170 F.3d 339, 345 (2d Cir. 1999).

The question in this case is a definitional one: what facts must exist for a person's living quarters within a building that is occupied by multiple people to be considered a separate residence from others for purposes of the Fourth Amendment, as distinct from a single, shared residence? The Second Circuit addressed this issue in *United States v. Kyles*, 40 F.3d 519 (2d Cir. 1994), in which it considered a challenge to the search of a defendant's locked bedroom during the course of the execution of a search warrant for an apartment. *Id.* at 521–22. The defendant in *Kyles* argued that "his bedroom was a separate residence not covered by the warrant because the door was locked, only he possessed the key, and he was not named in the affidavit underlying the search warrant." *Id.* at 522-23. The district court denied the defendant's motion to suppress, concluding that the entire apartment "was a single-family residence" and that the defendant's "exclusive possession of the key to his bedroom, by itself, did not render his bedroom a separate residence." *Id.* at 523.

The Second Circuit affirmed. It noted at the outset that "[i]f, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect." *Id.* at 524. It then explained that "[f]actors that indicate a separate residence include separate access from the outside, separate doorbells, and separate mailboxes." *Ibid*.

In light of these principles, the Second Circuit rejected the defendant's argument as "unconvincing" that the searching agents "knew that [his bedroom] was a separate residence," because "[t]he FBI agents had no reason to believe that [the defendant's] room was a separate residence: it had neither its own access from the outside, its own doorbell, nor its own mailbox." *Ibid.* According to the Second Circuit, the fact that the agents were told that the defendant "was

the only person with a key to the room did not, by itself, elevate the bedroom to the status of a separate residential unit." *Ibid.*

The *Kyles* decision plainly forecloses Reddick's Fourth Amendment claim. The only factual basis for Reddick to argue that he had a separate residence within 18 Ashford Street was that he had a bedroom where he could lock the door. But that is precisely the argument that *Kyles* rejected: it held that merely having one's own locked bedroom within a jointly occupied residence does not by itself mean that one has a separate residence for Fourth Amendment purposes. *See also United States v. Mouzon*, 2016 WL 7188150, at *9–10 (S.D.N.Y. 2016) (rejecting same argument and noting that "the sight of bedroom doors with locks on them does not invalidate officers' authority to execute a warrant for a whole residence," that "[d]efendant makes no claim, per *Kyles*, that the bedrooms had separate access points to the outside, separate doorbells, or separate mailboxes," and that "[s]imply because an apartment contains bedrooms within it, which are entered through doors, does not dissect that apartment into multiple residences, each requiring its own search warrant").

During the course of the suppression hearing, Reddick relied on photographs of the outside of the house that differed from the photograph of the house that is shown in the assessor record, and he contended that these photographs suggested that the house contained multiple, separate residences. These photos, for example, showed a back door to the house, a second mailbox by the side entrance of the house, two satellite dishes mounted on the house, and two or more labels by the front door mailbox (at least one of which appears to be scratched or torn away in part). But all of these photographs were either undated or were taken more than six months after the search occurred. The record offers no convincing grounds to undermine Agent Farley's conclusion in reliance on the assessor's report that the house was a single-family, shared

6

residence for which it was permissible to seek a single search warrant for the entire house. *See United States v. Santore*, 290 F.2d 51, 67 (2d Cir. 1959) (rejecting defendant's challenge to warrant that was based on contention that a house had more than one living unit where evidence showed that the house "is to all outward appearances a one-family house with a front door and a side door, and it had always been registered with the local authorities as a one-family dwelling," regardless of later efforts to sub-divide interior of house about which "no notice of this subdivision was ever given to the local officials").[2]

Even assuming Reddick were correct that the two bedrooms he occupied were somehow a separate residence within 18 Ashford Street, that fact would not invalidate the agents' authority to search these bedrooms. As *Kyles* makes clear, when agents learn during the course of a search that there are separate residences, this discovery does not vitiate their authority to conduct a search of the areas that belong to the target of the search warrant for which the search warrant application has established probable cause. *See* 40 F.3d at 524 ("if, during the search, the officers become aware that the warrant describes multiple residences, *the officers must confine their search to the residence of the suspect*.") (emphasis added).

Put differently, even if the search warrant lacked particularity as to the basis for a search of any living quarters that belonged to other residents of the house at 18 Ashford Street, the search warrant was particular as to Reddick himself. The facts here sufficed to establish probable cause throughout the entire house where Reddick was observed entering and leaving multiple

---

[2] After the suppression hearing Reddick filed a supplemental affidavit of one of the house's occupants asserting that the mailbox at the side door of the house was present at the relevant times. Doc. #52. Reddick has not explained why this evidence was not introduced in the first instance at the suppression hearing when he was invited to present any evidence and when such evidence could have been subject to in-person verification and cross-examination. In any event, even assuming there was a second mailbox at the side door of the house, this does not alone show that the house had multiple separate residences for purposes of the Fourth Amendment, much less that Reddick—who was observed going in and out of the *front* door of the house, as was a young mother and child—had his own separate or exclusive entrance.

7

times through the front door in connection with two crack cocaine deals. *See United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) (noting how "a drug dealer's narcotics and related paraphernalia is likely to be found in his residence," that "such contraband can be hidden in any portion of the residence," and that because "[t]he most obvious place for the police to search would be the drug dealer's bedroom" and because "any other portion of the house would be a more secure hiding place," it was not "overbroad or unreasonable" for the police to search "the entire premises").

Reddick argues that the house had "several occupants, each with individual privacy concerns." Doc. #41 at 3. But it is well-established that "the defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731 (1980).

Reddick's briefing does not cite or acknowledge *Kyles*. Instead, Reddick chiefly relies on the Supreme Court's decision in *Maryland v. Garrison*, 480 U.S. 79, 80 (1984), an older decision that was cited and accounted for in *Kyles* and that is distinguishable from the facts here because it involved a challenge to the search of a *non*-target's fully separate apartment unit that was on the same floor of an apartment house as the search warrant target's apartment. By contrast, the facts here are the search of a target's own living area for which there was abundant probable cause to believe that contraband would be found.

Reddick also relies on *United States v. Bermudez*, 526 F.2d 89, 96-97 (2d Cir. 1975), in which the Second Circuit affirmed the suppression of evidence from an overbroad search warrant for an entire building when there was probable cause to search only the bottom floors of the building. *Id.* at 96-97. That decision is also distinguishable, because the agents here had probable cause to search the entire house and especially to search Reddick's bedrooms.

8

In view that 18 Ashford Street was not a multi-unit residence, it is irrelevant that the agents did not do more to investigate this possibility before applying for a search warrant. The agents were not required to do more investigation so that they could draw the *wrong* conclusion that 18 Ashford Street was a multi-unit residence. By declining to engage in a pointless investigation, the agents did not act with gross or systemic negligence, recklessness, or malice of the type that would warrant an invocation of the exclusionary rule. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 144 (2009).

## CONCLUSION

For the foregoing reasons, the motions to suppress (Docs. #28 and #41) are DENIED.

It is so ordered.

Dated at New Haven this 21st day of December 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge