# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STANLEY REDDICK,<br>    *Defendant*. | No. 3:17-cr-00135 (JAM) |

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION IN LIMINE RE EXPERT TESTIMONY

Defendant has moved *in limine* to preclude in whole or in part the anticipated expert testimony of an experienced law enforcement agent about general manufacturing and marketing practices relating to narcotics trafficking. I will mostly deny defendant's motion except to the extent that the agent would testify that firearms are among the tools of trade of narcotics traffickers. Although I do not doubt the proposition that drug dealers commonly use guns, I am not convinced that this is a matter beyond the ken of an average juror for which expert testimony is warranted.

### BACKGROUND

The Government has charged defendant with multiple drug trafficking crimes as well as firearms counts arising from the seizure of a gun. I expect the Government's trial evidence will show that law enforcement agents conducted a search of the house where defendant and others lived and that they seized cocaine, heroin, and various types of drug paraphernalia from bedroom areas used by defendant. Although the agents did not find a gun in the house, they saw and photographed a Ruger gun lock in an upstairs bedroom closet, and they also found a military fragmentation protective vest.

In defendant's bedroom, agents found the key to a Toyota RAV4 that was parked inside the garage at the house. The agents soon obtained a search warrant for the car where they found a Ruger 9 mm gun, two kinds of ammunition, and about one ounce of fentanyl. The car was not registered to defendant, and I expect that an important issue at trial will be whether defendant had access to the car and used it to store the drugs, ammunition, and gun that were found inside.

The Government proposes to call as a witness at trial Special Agent Michael Zuk, a highly experienced FBI agent, to offer expert opinion testimony about the following subjects: "the methodology for the distribution of cocaine, cocaine base, heroin, and fentanyl; the typical wholesale and street-level retail quantities and prices for these controlled substances; the manner in which cocaine is converted into cocaine base; the manner in which heroin is broken down and packaged for distribution; common practices in the distribution of narcotics; and the utility of certain items (i.e., "tools of the trade") to further drug trafficking operations." Doc. #59 at 11. The Government proposes to have Agent Zuk testify "about the general practices of drug distribution, including packaging, quality, pricing, and terminology, as well as the role firearms typically play in a drug trafficking operation." *Id.* at 11-12.

Defendant has moved *in limine* to exclude or limit the testimony of Special Agent Zuk. Doc. #60. I heard argument from the parties on defendant's motion at the pre-trial conference and now issue this ruling.

## DISCUSSION

The Federal Rules of Evidence provide that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. "Testimony is properly characterized as 'expert'

only if it concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008).

I conclude that most of Agent Zuk's proposed testimony is the proper subject of expert testimony, especially because the Government at trial will be required to prove not merely defendant's possession of narcotics but also his intent to distribute the narcotics that he allegedly possessed. Three different kinds of narcotics were seized in this case, and I do not think that the average juror would likely be familiar with the particulars of and differences between cocaine, heroin, and fentanyl. This is especially true for fentanyl, which has most recently emerged as a very common narcotic for distribution. Nor do I believe that the average juror would likely be familiar with how cocaine, heroin, and fentanyl are usually packaged for sale and with pricing practices for these narcotics. Accordingly, I will allow Agent Zuk to testify about the general nature of each of these narcotics, where they come from, how they are commonly manufactured or processed, how they are commonly packaged for sale, and how they are commonly priced for sale.

I will also allow Agent Zuk to testify about other aspects of narcotics trafficking that I think would be beyond the knowledge of the average juror. First, I will allow him to testify about the general practice of narcotics sellers and buyers to use coded language and the meaning of common drug slang terms. *See, e.g.*, *Mejia*, 545 F.3d at 189 (noting approval of expert testimony in this area).

Second, with one exception for firearms discussed below, I will also allow Agent Zuk to testify about common "tools of the trade" for narcotics trafficking, because I do not believe that the average juror would likely know the use that certain otherwise innocuous items may have for a person who is involved in narcotics distribution. Although the Government has represented that

3

it will not show Agent Zuk any of the items recovered during the execution of search warrants in this case, the Government may ask him to identify common tools of the trade that are used by narcotics traffickers and may also ask Agent Zuk in generic terms about the potential use in narcotics trafficking operations of items like the kind that were recovered from the searches in this case (*e.g.*, baggies/wrappers, spoons, baking soda, a blender, a microwave, a vacuum sealer, a cutting agent, money bands, a money counter, stamps, and face masks). All of this testimony will be helpful to the jury's determination of whether defendant was engaged in drug trafficking at all and on what scale (which may be relevant to the jury's determination whether and for what purpose he may have possessed a gun).

A closer question in my mind is whether Agent Zuk should be permitted to testify that firearms are a tool of the trade of narcotics traffickers. Of course, I have no doubt that firearms are tools of the drug trade. *See, e.g.*, *United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011) (noting "innumerable precedents" to this effect). What is less clear is whether this linkage is something for which an expert is needed—whether it is beyond the ken or knowledge of the average juror. On balance, I don't think average jurors need an FBI or DEA agent to tell them that drug dealers often use or possess firearms to protect themselves and their drugs and drug profits. I can't see the need for an expert on this issue any more than I would see the need for an expert in a bank robbery case to say that bank robbers like to wear masks or in a terrorism case to say that terrorists like to blow up bombs. The linkage is well within the everyday knowledge of an average juror. *See, e.g.*, *United States v. Castillo*, 924 F.2d 1227, 1232-33 & n.1 (2d Cir. 1991) (district court erred when admitting expert testimony on certain drug dealer practices not beyond knowledge of average juror and "voic[ing] similar skepticism regarding the need for an expert witness to explain the most elementary concepts of certain well-publicized criminal

4

schemes"); *United States v. Stanley*, 2016 WL 7104825, at *4 (D. Conn. 2016) ("the jury does not need an expert's opinion about the obvious proposition that drug dealers use violence and firearms to protect their drug trafficking activity.").[1]

For an expert to come in to state the obvious about guns and drug dealing going together not only exceeds the permissible limits of expert testimony but also comes with some unfair risk that the jury will conclude largely because of the expert's imprimatur that the gun at issue here must have had something to do with drug dealing. It is one thing for an expert to testify based on specialized knowledge about narcotics packaging materials and quite another for an expert to testify that drug dealers are commonly or usually gun criminals as well.

In any event, as the Second Circuit has cautioned, a jury may not *ipse dixit* conclude that solely because a drug dealer possesses a gun, then he necessarily possesses it to further his drug dealing. "The government does not establish that a firearm was possessed in furtherance of drug trafficking merely by relying on the proposition that drug dealers generally use guns to protect themselves and their drugs, and thus that any time a gun is possessed by a drug dealer it is possessed in furtherance of his drug offenses." *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008).

Even if I thought that the average juror does not understand the quite common association between narcotics trafficking and firearms, I would conclude that the Government's proposed testimony from Agent Zuk would be unfairly prejudicial under Fed. R. Evid. 403, because the Government explicitly proposes to tailor the testimony to match the evidence in this case. The

---

[1] I do not discount that other courts have approved the introduction of expert testimony that guns are among the many tools of the trade of drug dealers, but these rulings ordinarily focus on the qualifications of the expert rather than discussing why this issue is outside the common knowledge of jurors. *See, e.g., United States v. Vargas-Rodriguez*, 692 F. App'x 65, 66 (2d Cir. 2017); *United States v. Lopez*, 547 F.3d 364, 373 (2d Cir. 2008); *United States v. McCoy*, 303 F. App'x. 45, 47 (2d Cir. 2008).

Government states that "Agent Zuk's anticipated testimony related to firearms would be more nuanced than that 'drugs and guns go hand in hand,'" but that "[i]n this case, law enforcement officers recovered a firearm and fentanyl in a car parked behind Reddick's house," and that "[t]he Government anticipates that Agent Zuk's testimony would address the reasons why a drug dealer might conceal a firearm outside of his residence, keep fentanyl away from his living quarters, and split his drug stash in two or more locations." Doc. #64 at 1.

This is precisely the type of made-to-order expert testimony that the Second Circuit has warned should not be permitted in these kinds of cases. "[I]t is a little too convenient that the Government has found an individual who is expert on precisely those facts that the Government must prove to secure a guilty verdict—even more so when that expert happens to be one of the Government's own investigators," and "[t]he Government cannot satisfy its burden of proof by taking the easy route of calling an 'expert' whose expertise happens to be the defendant." *Mejia*, 545 F.3d at 191. That is what the Government seeks to do here by means of its "nuanced" tailoring of Agent Zuk's testimony to comment on inferences to be drawn from very specific factual permutations that happen to be presented in this case involving an out-of-home location of a firearm and a specific kind of drug (fentanyl) that was kept in the Toyota RAV4.

Although Agent Zuk may not testify about the use of guns as a tool of the trade for drug dealing, the Government is free to argue during closing statements the common sense reasons why someone who is engaged in unlawful narcotics trafficking may decide to possess a firearm for protection. This is in keeping with defendant's concession that "the link between guns and drugs is common knowledge, and a concept that is easy for any lay person to understand." Doc. #60 at 3. If defendant were contesting the commonly known linkage between guns and drug

dealing, I might reconsider whether expert testimony would be appropriate on this issue. *See,*

*e.g.*, *United States v. Taylor*, 18 F.3d 55, 59-60 (2d Cir. 1994).

To ensure that the jury understands the limits of Agent Zuk's testimony, the Court proposes to issue the following cautionary and limiting instruction (subject to comment and suggestion from counsel):

> Ladies and gentlemen, the Government is now calling as a witness Special Agent Michael Zuk of the Federal Bureau of Investigation. Before he testifies, I want to give you the following limiting instruction so that you will understand the nature of and limits you must consider with respect to his testimony.
>
> Before I do that, you should understand that there are generally two kinds of witnesses who may testify at any kind of a trial. The first and most common kind of a witness is a "fact" witness who testifies about matters that he or she has personally observed that directly relate to the case before you. So, for example, if this were a case about a traffic accident, there might be a so-called "fact" witness who would testify that he or she saw that the traffic light was red when a car drove into an intersection. Now the second kind of trial witness is a so-called "expert" or "opinion" witness, who does not testify about the specific facts of a case but who is permitted to testify in the form of his or her opinions about the understanding of factual matters that may not be within the usual range of your knowledge as jurors. So again if this case were a traffic accident case, there might be an engineer "opinion" witness who would testify in the form of an opinion about how long it usually takes a car that is moving at a certain speed to come to a stop on a wet road. And if you were the jury in that traffic accident case, you would have to decide as you would for any witness if that so-called opinion makes sense and applies to the fact of the case before you.
>
> That gets us back to this case and the anticipated testimony of Agent Zuk. The prosecution claims that Agent Zuk was not involved in the investigation of this case and is not called as a fact witness. The prosecution will not show him any of the evidence in this case, because he is not here to testify about what actually happened in this case. Instead, he is called by the prosecution solely to testify about matters concerning the general business of narcotics trafficking that may not be within the range of what you already know. He will be allowed to testify on the basis of his experience about matters such as general or common practices relating to manufacturing and marketing of certain kinds of narcotic drugs. Just as for any witness who comes before you, it will be solely for you to decide if his testimony is believable. And even if you believe his testimony about general or common manufacturing and marketing practices, it will be for you to decide how—if at all—any of that testimony relates to any of the evidence that you hear from the prosecution's fact witnesses. Of course, the fact that some event or practice may be general or common does not automatically mean that it is true in any particular case

like this one. That is for you to decide in light of all the evidence. So with all that in mind the prosecution may proceed with the questioning of Agent Zuk.

## Conclusion

For the foregoing reasons, defendant's motion *in limine* (Doc. #60) is GRANTED in part and DENIED in part, subject to the Court's issuance of a cautionary and limiting instruction.

It is so ordered.

Dated at New Haven this 8th day of January 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge